

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 21, 2017

## STATE OF TENNESSEE v. BLAKE AUSTIN WEAVER

**Appeal from the Circuit Court for Anderson County
No. B4C00501      Donald Ray Elledge, Judge**

_____

**No. E2016-01774-CCA-R3-CD**

_____

The Defendant, Blake Austin Weaver, appeals the revocation of his community corrections sentence. Pursuant to a guilty plea, he was convicted of one count of theft of property valued more than $60,000 and eleven counts of forgery of a check in an amount greater than $1,000 and less than $10,000. The trial court imposed an effective sentence of fifteen years to be served on community corrections. The trial court revoked the Defendant's community corrections sentence after finding that the Defendant failed a drug screen, failed to pay restitution, and did not comply with orders to attend intensive outpatient therapy and enter a halfway house. After revocation, the trial court ordered the Defendant to serve the remainder of his sentence in prison. He argues that the trial court abused its discretion by revoking his community corrections sentence, contending that the trial court erroneously failed to consider his ability to pay restitution, relied on grounds outside the notice of violation, and acted too harshly in requiring him to serve the remainder of his sentence in confinement. After a thorough review of the record and applicable law, we affirm the judgment revoking the Defendant's community corrections sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and J. ROSS DYER, JJ., joined.

J. Thomas Marshall, District Public Defender, for the appellant, Blake Austin Weaver.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; and Rachel Sobrero, Assistant District Attorney General Pro Tem, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

In July 2015, the Defendant entered a guilty plea to one count of theft of property valued more than $60,000 and to eleven counts of forgery of a check in an amount greater than $1,000 and less than $10,000. T.C.A. §§ 39-14-103(a), -114(a). For the theft conviction, the Defendant received a twelve-year sentence. For the forgery convictions, the Defendant received concurrent sentences of three years. The trial court ran the theft and forgery sentences consecutively for an effective sentence of fifteen years, suspended the sentences after the service of 180 days, and placed the Defendant on community corrections for the remainder of the sentence. The terms of the community corrections sentence included submitting to drug screens, maintaining employment, and paying restitution to the victim in the amount of $146,340.91 to be paid in monthly payments of no less than $1,000.

In March 2016, a violation of community corrections warrant was issued against the Defendant for failure to (1) pass a drug screen on February 24, 2016, (2) pay any restitution to the victim, and (3) attend intensive outpatient treatment and enter a halfway house at the direction of his community corrections officer.

At the hearing, Mr. Hugh Kring, the Defendant's supervisor within the community corrections program, testified that the Defendant failed to maintain compliance with the terms of his sentence, stating that the Defendant failed a drug screen, failed to enter a halfway house, failed to attend intensive outpatient therapy, and failed to pay restitution to the victim. Mr. Kring explained that after the Defendant was released from prison, the Defendant tested positive for oxycodone and suboxone in February of 2016. He stated that the Defendant only attended one class for intensive outpatient therapy upon entering the community corrections program. He also stated that he never received any money from the Defendant to go toward his restitution payments.

On cross-examination, Mr. Kring testified that the Defendant reported to him weekly after his release from prison, with the exception of one or two occasions when the Defendant had transportation problems. Mr. Kring testified that he did not believe the Defendant had the ability to pay restitution. He stated that he believed the Defendant made a good candidate for drug court and that he had recently learned of the Defendant's application to attend drug court, explaining that the Defendant had "a drug problem" and needed treatment.

The Defendant testified that he did not earn enough money to pay restitution. He explained that his employer garnished his wages for debts owed to the employer, leaving

him with a weekly paycheck of about $100 to $150. He also testified that after he began to relapse, he asked Mr. Kring if he could enter into a treatment program. He explained that although Mr. Kring secured enrollment into a treatment facility, the Defendant did not admit himself because he knew he would fail the drug screen required for admission. He stated that on the day of the violation of community corrections hearing, he applied to the drug court program. He also stated that he believed he needed a structured program to help him with his drug addiction.

On cross-examination, the Defendant testified that he used part of his paycheck to pay for drugs. He conceded that he only attended intensive outpatient therapy on one occasion.

After hearing arguments from the Defendant and the State, the trial court found that the Defendant violated the terms of his community corrections sentence by failing to pass a drug screen on February 24, 2016, failing to pay the minimum restitution owed to the victim, and failing to attend and participate in programs as directed by Mr. Kring, including intensive outpatient therapy and a halfway house. The trial court also found that the Defendant did not try to "get clean," chose to pay other debts instead of making restitution payments, and ignored Mr. Kring's orders. The trial court noted that it was unclear whether the Defendant qualified for drug court because he filed his application on the same day as the hearing. The trial court revoked the Defendant's community corrections sentence, ordering the Defendant to serve the remainder of his sentence in prison.

## ANALYSIS

The Defendant claims that the trial court abused its discretion when it revoked the Defendant's community corrections sentence. The Defendant argues that (1) the trial court should have considered the Defendant's "present ability to make the [restitution] payments required" at the time of the violation; (2) the trial court relied on findings, when revoking the Defendant's community corrections sentence, "that were not alleged in the warrant and not part of the conditions of that sentence"; and (3) the trial court acted "too harshly" when it revoked the Defendant's community corrections sentence and ordered him to serve the remainder of his sentencing in confinement. The State argues that the trial court did not abuse its discretion. We agree with the State.

A trial court may revoke an alternative sentence if it finds by a preponderance of the evidence that the defendant has violated his or her probation. *See* T.C.A. §§ 40-35-310, -311(e); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001). The decision to revoke the alternative sentence rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of

- 3 -

a community corrections sentence is subject to an abuse of discretion standard of review rather than a de novo standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community corrections sentences has occurred. *Shaffer*, 45 S.W.3d at 554; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need only be established by a preponderance of the evidence. *See* T.C.A. § 40-35-311(e)(1); *State v. Jeremy Dewayne Cooper*, No. W2015-00914-CCA-R3-CD, 2016 WL 7687034, at *2 (Tenn. Crim. App. Feb. 5, 2016).

In *State v. David W. Sonnemaker*, the defendant was issued a warrant for violating his probation, alleging that he violated the terms of his sentence by failing to "submit to DNA testing." No. E2003-01402-CCA-R3-CD, 2004 WL 483239, at *4 (Tenn. Crim. App. Mar. 12, 2004). This court held that that the trial court erred "[b]ecause the trial court based its decision to revoke probation, at least in part, on the Defendant's practice of making the probation officer work around his travel schedule," which was not a ground alleged in the warrant. *Id.* at *5. Ultimately, however, this court held that the trial court's error was harmless "because the Defendant's failure to submit to DNA testing [was] sufficient to support the revocation." *Id.* In a separate case involving a violation of a community corrections sentence, this court cited *David W. Sonnemaker* approvingly for the proposition that a "trial court's reliance, at least in part, on a ground for revocation not noticed to the defendant [is harmless error] if the trial court also relied upon properly noticed grounds supported by the evidence." *State v. Christopher Roy McGill*, No. M2015-01929-CCA-R3-CD, 2016 WL 3947694, at *4 (Tenn. Crim. App. July 18, 2016).

The Defendant argues that the trial court relied on grounds that were not alleged in the violation of community corrections warrant and that were not conditions of his community corrections sentence to revoke his alternative sentence, including his failure to pass a drug screen in July of 2015, his failure to report regularly to his community corrections officer, and his termination "from the road crew during his initial 180 day jail sentence." We hold that even if the trial court relied, in part, on improper grounds for revocation, the error was harmless because the evidence supports revocation based on the other violations: the Defendant's failure to pass a drug screen and the Defendant's failure to follow his community corrections officer's orders to attend therapy and enter a halfway house. *See Christopher Roy McGill*, 2016 WL 3947694, at *4.

Upon revocation of a community corrections sentence, a trial court may resentence a defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed as long

as it gives the defendant credit for any time already served in any community-based alternative to incarceration.  T.C.A. § 40-36-106(e)(4).

The Defendant argues that the trial court acted too severely in deciding to revoke his community corrections sentence and impose a term of incarceration.  The decision to revoke community corrections supervision and impose a term of incarceration is within the trial court's discretion when a violation has been established.  T.C.A. § 40-36-106(e)(4); *Mitchell*, 810 S.W.2d at 735.  The Defendant has failed to establish that the trial court abused its discretion in ordering him to serve the remainder of his sentence in confinement.

When the basis for revocation of a probationary or community corrections sentence is failure to pay restitution, a court may not revoke the sentence until determining the underlying reasons why the payment has not been made. *State v. Dye*, 715 S.W.2d 36, 40 (Tenn.  1986); *Massey v. State*, 929 S.W.2d 399, 402 (Tenn. Crim. App. 1996) (citing *Bearden v. Georgia*, 461 U.S. 660 (1983)); *State v. William Lewis Reynolds*, No. 01C01-9309-CC-00306, 1994 WL 115958, at *3 (Tenn. Crim. App. Apr. 7, 1994).  If the nonpayment is due to willful refusal to pay or failure to make sufficient bona fide efforts to obtain the means to pay, then probation or community corrections may be revoked.  *Dye*, 715 S.W.2d at 40.  If, on the other hand, the nonpayment stems from the defendant's inability to pay, it may not form the basis for imprisonment unless alternative measures other than incarceration are inadequate to meet the State's needs in punishment and deterrence.  *Id.*  If, however, a defendant violates other terms of his or her probation besides failing to pay restitution, a trial court's failure to find evidence of willfulness is harmless error, assuming the trial court rests its revocation, at least in part, upon the other violations.  *See State v. David Houston Greene*, No. E2010-02495-CCA-R3-CD, 2011 WL 5827245, at *3-4 (Tenn. Crim. App. Nov. 18, 2011).

The Defendant argues that the trial court abused its discretion by failing to consider the Defendant's ability to make the required restitution payments at the time of revocation.  The Defendant contends that he did not willfully refuse to pay restitution, citing his testimony that his wages were garnished and his take-home pay was too low and the community corrections officer's testimony that the Defendant did not have the ability to pay restitution.  The trial court, however, found that the Defendant failed to pay restitution because he paid other debts in lieu of paying restitution and used his income to purchase drugs.  Regardless of whether the trial court found sufficient evidence of willfulness and because the revocation was supported on multiple other grounds, including his failure to pass the February 24, 2016 drug screen and failure to abide by the orders of Mr. Kring to attend therapy and enter a halfway house, we conclude that any

error would be harmless and the trial court properly revoked the Defendant's community corrections sentence. *See David Houston Greene*, 2011 WL 5827245, at *3-4.

The record reflects that the Defendant violated the terms of his sentence because he failed to pass a drug screen on February 24, 2016, and comply with his supervisor's orders to attend intensive outpatient therapy and enter a halfway house. The record shows that there was sufficient evidence to support the trial court's conclusion that the Defendant violated the terms of his community corrections sentence and that the Defendant's revocation was not an abuse of the court's discretion. Accordingly, we affirm the trial court's decision to revoke the Defendant's community corrections sentence and to impose a term of incarceration.

## CONCLUSION

Based upon the foregoing, the revocation of the Defendant's community corrections sentence is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE